**EXHIBIT A**

State of Illinois          )
                           ) ss
County of St. Clair        )

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF COMPLAINT FOR FORFEITURE**

I, Michael Reichert, declare under penalty of perjury the following:

At all relevant times, I have been a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). The contents of this Declaration are based on information provided to me during the course of my investigation from participants in the criminal activity, from other witnesses, and from other law enforcement officers.

1.	On February 4, 2019, declarant, along with TFO Timothy Lay (TFO Lay), were sitting in the median monitoring west bound traffic on Interstate 70 near the 29 mile marker when TFOs observed a white 2013 Lexus SUV approaching. The TFOs could not see the license plate when the Lexus passed due to the vehicle being extremely dirty. The TFOs decided to follow the vehicle in an attempt to obtain the license plate information. As the TFOs pulled onto the interstate and began to follow the Lexus, the TFOs observed the vehicle pull to the right and cross the white fog line. As TFOs got closer to the vehicle, they observed a license plate frame that partially obstructed the state in which the plate was issued. TFOs finally identified the vehicle to have an Arizona registration.

2.	TFOs activated the emergency lights on their patrol vehicle and upon doing so noticed the Lexus pull on to the shoulder of the interstate, but continue to drive on the shoulder for approximately a half of a mile before coming to a stop. The Lexus was pulled over for improper lane usage for failing to maintain a single lane of traffic. After the vehicle came to rest, the TFOs pulled their patrol vehicle in behind the Lexus. The vehicle's license plate was queried through

law enforcement databases, which showed the registration returned to Liliya Zavlunov of Scottsdale, Arizona.

3.      TFO Lay approached the passenger side door of the Lexus, made contact with the driver, and asked the driver for his driver's license and insurance card. The white male driver handed TFO Lay an insurance card and his driver's license. The driver's license identified the driver as Eduard ZAVLUNOV with an address in Scottsdale, Arizona. The insurance card had Eduard ZAVLUNOV's name on it and the name of a female that ZAVLUNOV identified as his wife. The insurance card provided was not for the vehicle currently being driven.

4.      Declarant was standing at the rear of the vehicle and observed that the vehicle was loaded with miscellaneous boxes and that there was a blanket across the rear seat. Declarant also noticed the vehicle had a lot of trash and appeared to have been on the road for a long time. TFO Lay handed declarant ZAVLUNOV's driver's license and declarant returned to the patrol vehicle to check ZAVLUNOV's driving status. TFO Lay remained at the Lexus and was asked by ZAVLUNOV why he was stopped. TFO Lay advised ZAVLUNOV that he had crossed the fog line. TFO Lay asked ZAVLUNOV where he was traveling from and ZAVLUNOV stated he was coming from New York from a big party. TFO Lay asked ZAVLUNOV if his trip was for work or pleasure and ZAVLUNOV stated work, big party and stated either "wedding" or "waiting." TFO Lay asked if ZAVLUNOV catered something and ZAVLUNOV just shook his head and said that it was some type of "waiting" or "wedding" event. TFO Lay asked ZAVLUNOV how long he was in New York and ZAVLUNOV stated he was there for the weekend and that he had 1500 miles to drive to get back home. TFO Lay then returned to the patrol vehicle.

5.      During the conversation between ZAVLUNOV and TFO Lay, declarant queried ZAVLUNOV through law enforcement databases, which showed that ZAVLUNOV had a valid

Arizona driver's license. It also showed that ZAVLUNOV had multiple criminal history responses, including a 2002 marihuana production/drug possession, a 2007 marihuana possession for sale, and a 2009 transport/sell narcotics/controlled substance.

6.      Declarant advised TFO Lay of the driving status and of the criminal history responses when TFO Lay returned to the patrol vehicle. TFO Lay advised that upon approaching ZAVLUNOV's vehicle, TFO Lay smelled a very strong odor of cologne or perfume that smelled as if it had just been sprayed. TFOs have seen this tactic used before when they have seized drugs and/or currency from subjects. The subjects will introduce a masking agent, in this case cologne, in an attempt to cover up the odor of narcotics. TFO Lay also advised that he could smell a strong odor of cannabis coming from the inside of the vehicle as well. TFO Lay relayed the conversation he had with ZAVLUNOV and stated that ZAVLUNOV appeared tired and his clothing looked like it had been worn for a couple of days or that ZAVLUNOV had been traveling in the same clothes for an extended period of time. TFO Lay asked declarant to re-approach the vehicle to see if declarant could also smell the cologne and cannabis inside of the vehicle. Declarant completed the written warning and exited the patrol vehicle.

7.      Declarant approached the passenger side of the vehicle and asked ZAVLUNOV to exit the vehicle. As ZAVLUNOV exited the vehicle, declarant could smell the odor of cologne and cannabis coming from the inside of the vehicle. Declarant advised ZAVLUNOV that the TFOs could smell marihuana odor coming from inside the vehicle and asked ZAVLUNOV if he had any personal amounts of marihuana in the vehicle. ZAVLUNOV responded yes and asked if the TFOs wanted him to get it. Declarant asked ZAVLUNOV where the marihuana was located and ZAVLUNOV stated it was in the center console of the vehicle. TFOs advised ZAVLUNOV that they were going to remove the marihuana from the vehicle and asked ZAVLUNOV if he had any

3

other drugs in the vehicle such as large amounts of cocaine and ZAVLUNOV stated no.  Declarant

asked ZAVLUNOV if he had any large amounts of heroin in the vehicle and ZAVLUNOV stated

no.  Declarant asked ZAVLUNOV if he had any large amounts of marihuana in the vehicle and

ZAVLUNOV again stated no.  Declarant asked ZAVLUNOV if he had any large amounts of

United States currency in the vehicle and ZAVLUNOV asked what that was.  Declarant explained

to ZAVLUNOV that he was asking about money.  ZAVLUNOV stated he had a few hundred

dollars for traveling.  Declarant asked ZAVLUNOV if he had anything illegal on him such as guns

or drugs and ZAVLUNOV stated no.  Declarant asked ZAVLUNOV if the TFOs could search him

for weapons and drugs and ZAVLUNOV said yes.  ZAVLUNOV then started reaching for the

pocket of his coat.  TFOs told ZAVLUNOV not to reach into his pocket but ZAVLUNOV

continued to do so and put his hand in the left pocket of his coat.  TFO Lay saw a bulge in the

pocket and grabbed ZAVLUNOV's hand.  At that time it was determined that the bulge was a large

amount of United States currency, much more than the couple of hundred dollars ZAVLUNOV

previously claimed to have.  Declarant then searched ZAVLUNOV and located two packages of

cannabis in ZAVLUNOV's right pocket that said "Wedding Cake" on the packaging and a small

plastic bag containing approximately 46.3 grams of suspect cocaine in ZAVLUNOV's front coat

chest pocket.  ZAVLUNOV also had a red notebook in his coat pocket and upon examining the

contents of the notebook, declarant found what appeared to be a ledger with large amounts of what

appeared to be cash totals along with the names of suspected strands of cannabis.  Declarant

located an entry that stated "Birthday Cake 215 x 1,100 = 24,200" along with other similar entries.

ZAVLUNOV was placed in handcuffs and placed it the front seat of TFOs patrol vehicle.

8.      TFOs began a search of ZAVLUNOV's vehicle.  TFO Lay located two jars that

contained approximately 2244.8 grams of marihuana and miscellaneous cannabis edibles in the

center console. TFO Lay then slid a panel in the center console and located a large

brownish/blackish tar-like substance in a vacuum-sealed bag. Declarant began searching the cargo

area of the vehicle and located an orange square cardboard box. Upon opening the box, TFOs

located several bundles of United States currency along with two large silver in color vacuum-

sealed bags. TFO Lay opened the bag and discovered it contained multiple bundles of United

States currency. TFOs then stopped the search and called for TFO JD Beil (TFO Beil) and TFO

Jake Degener (TFO Degener) to respond to the traffic stop.

      9.      While waiting on TFO Beil and TFO Degener to respond to the traffic stop, declarant

contacted TFO Kevin Thebeau, TFO Kyle Waddington, and TFO Larry Brantley to inform them

that the vehicle would be transported to the Pontoon Beach (Illinois) Police Department. While

declarant was sitting in the patrol vehicle with ZAVLUNOV, TFO Lay returned to the patrol

vehicle. Declarant asked if the black substance he located was heroin. ZAVLUNOV stated no.

ZAVLUNOV stated that it was an edible that he makes at home and eats. TFO Lay stated it

smelled like marihuana.

      10.     Upon the arrival of TFO Beil and TFO Degener, declarant advised them what was

located and where it was located in the vehicle. Declarant requested that TFO Beil and TFO

Degener take custody of the United States currency by placing the currency into an evidence bag

and sealing it. Declarant and TFO Lay returned to the patrol vehicle and asked ZAVLUNOV if the

money belonged to him and ZAVLUNOV stated it did. Declarant as witnessed by TFO Lay asked

ZAVLUNOV if he would sign the evidence bag stating the money was his and ZAVLUNOV said

no.

      11.     A decision was made to move the vehicle off the interstate and to a secure location to

complete the collection of evidence. The vehicle was driven by TFO Lay to the Pontoon Beach

Police Department.  Declarant transported ZAVLUNOV in the patrol vehicle.  TFO Beil and TFO

Degener transported the seized United States currency to the Pontoon Beach Police Department to

have a K9 sniff performed on the currency.  Declarant contacted Madison County Sheriff's K9

Deputy Brianna Markel (K9 Deputy Markel) and requested that she respond to the Pontoon Beach

Police Department with her K9 Jada.

12.     Upon arrival at the Pontoon Beach Police Department, TFO Thebeau located four

empty cardboard boxes and set them up in the sally port along the west wall.  TFO Beil and TFO

Degener arrived with the seized currency and TFO Thebeau placed the seized currency in the third

box from the left.  The boxes were set up for approximately 45 minutes before K9 Deputy Markel

arrived.

13.     K9 Deputy Markel arrived at the Pontoon Beach Police Department and met with

TFOs who requested a K9 sniff of four cardboard boxes.  K9 Deputy Markel deployed K9 Jada

into the sally port for a narcotics sniff where K9 Deputy Markel observed the four boxes to be in a

line approximately four feet apart.

14.     K9 Deputy Markel positioned K9 Jada a few feet left of the boxes, waited

approximately 15-20 seconds, and then commanded K9 Jada to search.  K9 Jada searched all four

boxes in a row (from left to right).  K9 Deputy Markel observed K9 Jada give a quick head turn

towards the third box, but K9 Jada continued and completed her search of all of the boxes.  Upon

returning to the furthest box to the left, K9 Jada turned around and returned to the third box (from

the left) where K9 Deputy Markel observed a change in K9 Jada's breathing pattern and her body

become rigid.  K9 Deputy Markel then observed K9 Jada press her nose to the box, take in deep

breaths, and subsequently go into a final alert of sitting near the box.  These are K9 Jada's

indications to the presence of the odor of narcotics.  K9 Deputy Markel advised TFOs of the

positive alert to the third box (from the left).  The TFOs requested that K9 Deputy Markel remove

the contents of the box that K9 Jada alerted on.  The box contained an unknown amount of United

States currency.

15.     Special Agent Ryan Bandy (SA Bandy) and declarant conducted an interview of

ZAVLUNOV at the Pontoon Beach Police Department.  The interview was audio and video

recorded.  At the beginning of the interview, SA Bandy advised ZAVLUNOV of his Miranda

Rights and ZAVLUNOV stated he understood his rights.  ZAVLUNOV stated he had been in the

New York area for about two weeks looking to purchase property to build a 50-unit development

for single-family homes.  ZAVLUNOV stated that he had been in New York by himself and visited

several locations with a realtor but was unable to provide the name of the agent.  When

ZAVLUNOV was asked about the United States currency in his possession, he stated that he had

sold a house about eight years ago and made over $300,000 profit from the sale.  ZAVLUNOV

stated that he loaned about $200,000 out to friends and family when he sold the house.

ZAVLUNOV stated that when he was in New York he met with his family and they had paid him

his money back.  When asked about who had paid him back, ZAVLUNOV refused to provide any

names to support his claim.  When asked how much money he collected, he stated about $88,000.

When asked what kind of work he does to earn a living, ZAVLUNOV stated that he is self-

employed and owns a small car lot that sells imported vehicles.  When asked about how much

money he made a year for his salary he stated about $60-70,000.  When asked about the black wax

substance, ZAVLUNOV stated that he ate the substance in soups.  When asked about making the

substance ZAVLUNOV stated he bought it like that.  Declarant reminded ZAVLUNOV of his

statement at the traffic stop where ZAVLUNOV stated he made it at home to eat.  ZAVLUNOV

denied making that statement.  Declarant asked ZAVLUNOV why it took ZAVLUNOV so long to

stop after the TFOs activated their emergency lights on the interstate.  Declarant asked

ZAVLUNOV if he was spraying cologne and ZAVLUNOV stated he was spraying cologne.

16.     On February 5, 2019, TFOs and SA Bandy were informed that a search warrant

was conducted on ZAVLUNOV's home in Scottsdale, Arizona by DEA agents in Arizona.

Pursuant to the search warrant, agents seized $108,290.00 in United States currency, a 2006

Mercedes Benz S Class, a 2013 BMX X6 as well as the real property located at 13175 North 75th

Place, Scottsdale, Arizona.  Furthermore, SA Bandy informed declarant that the Arizona agents

inquired about a man's Calibre' Cartier diamond watch that ZAVLUNOV was wearing at the time

of his arrest in Illinois.  Arizona agents asked if declarant and TFO Lay would seize the watch.

Declarant and TFO Lay then went to the Pontoon Beach Police Department and retrieved the watch.

17.     On February 4, 2019, TFOs also seized the 2013 Lexus SUV that ZAVLUNOV was

driving.  Notice of the seizure was provided to both Eduard ZAVLUNOV and Liliya Zavlunov;

however, neither filed a claim and the Lexus was administratively forfeited by the Drug

Enforcement Administration on July 18, 2019.

18.     On February 6, 2019, TFO Thebeau and TFO Waddington transported the seized

currency to Loomis for an official count.  The amount of currency seized from ZAVLUNOV was

determined to be $178,265.00.

19.     Based on the foregoing, declarant believes that the subject-matter $178,265.00 in

United States Currency is property which constitutes money furnished or intended to be furnished by

a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or

money used to facilitate a violation of 21 U.S.C. § 801 *et seq.*

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true

and correct.

8

Executed on this 25th day of July, 2019.

MICHAEL REICHERT
Task Force Officer
Drug Enforcement Administration